UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| EVELYN ANN KAMMERER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. ED CV 16-1973-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Evelyn Ann Kammerer ("Plaintiff") appeals from the Social Security Commissioner's final decision denying her application for Social Security Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///

///

///

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as Defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

Plaintiff applied for DIB on August 30, 2012, alleging a disability beginning March 10, 2009. Administrative Record ("AR") 59. After Plaintiff's application was denied initially and upon reconsideration, she requested a hearing before an administrative law judge ("ALJ"). AR 89-99, 101-07. On March 9, 2015, a hearing was held in front of an ALJ. AR 26-58. The ALJ heard testimony from Plaintiff, who was represented by counsel, as well as a medical expert ("ME") and a vocational expert ("VE"). See id.

In a written decision issued March 27, 2015, the ALJ denied Plaintiff's claim for benefits. AR 9-25. The ALJ concluded that Plaintiff "last met the insured status requirements of the Social Security Act on March 31, 2014." AR 14. Further, based on his review of the evidence, the ALJ determined that Plaintiff possesses the residual functional capacity ("RFC")

> to perform light work . . . except she is limited to frequent overhead reaching with the non-dominant left upper extremity. She is capable of occasional pushing/pulling with the non-dominant left upper extremity. Further, she is able to perform occasional manipulation with the dominant right upper extremity including fine fingering and handling while being limited to less than occasional or rare manipulation with the left upper extremity. Lastly, she is restricted from climbing ladders, ropes or scaffolds as well as working at unprotected heights.

AR 15.

Based on the VE's testimony, the ALJ found that through the date last insured, Plaintiff could perform jobs that existed in significant numbers in the national economy, and was not therefore disabled. AR 20-21.

Plaintiff requested review of the ALJ's decision. AR 7-8. The Appeals

Council denied review in July 2016, and the unfavorable ALJ decision became the final decision of the Commissioner. See 20 C.F.R. § 404.984. This action followed.

## II.

## DISCUSSION

Plaintiff argues that the ALJ erred (1) in discounting the opinion of consultative examiner, Dr. Xiao-Quan Yuan, and (2) in the step-five analysis. Joint Stipulation ("JS") at 3. For the reasons discussed below, the Court finds that the ALJ did not err in discounting Dr. Yuan's opinion, and any step-five error was harmless.

**A.     Dr. Yuan's Opinion**

Plaintiff argues that the ALJ erred by according little weight to Dr. Yuan's opinion. JS at 3-8.

**1.     Applicable Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c);[2] Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a nonexamining physician's. Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only

---

[2] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Fox v. Berryhill, No. 16-4738, 2017 WL 3197215, at *3 n.6 (C.D. Cal. July 27, 2017). Accordingly, the Court applies the version of 20 C.F.R. § 404.1527 in effect at the time of the ALJ's March 2015 decision.

3

for "clear and convincing reasons." See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is accompanied by adequate explanation, the nature and extent of the treatment relationship, and consistency with the record as a whole, among other things. 20 C.F.R. § 404.1527(c).

### 2. Relevant Facts

#### a. Consultative Examiner Dr. Nahel Al Bouz

On May 26, 2013, Dr. Bouz, a board certified internist, examined Plaintiff at the Social Security Administration's ("SSA") request. AR 628-33. Dr. Bouz observed "[r]eflex sympathetic dystrophy of the left hand status post two carpal tunnel surgery." AR 632. Plaintiff had full range of motion of the left hand but significant hyperesthesia and weakness of the left handgrip. Id. Plaintiff was able to make a fist and oppose all fingers with both thumbs. Id.

With regard to Plaintiff's right hand, Dr. Bouz observed "carpal tunnel syndrome" with irritated nerves on the right side and a positive carpel tunnel syndrome test. Id. "[T]here was no thenar or hypothenar muscular atrophy and [Plaintiff] was able to make a full fist and oppose all fingers with the right thumb. She had a good strength in the hand." Id.[3] Dr. Bouz also diagnosed

---

[3] "Thenar" refers to the base of the thumb, and "hypothenar" refers to the muscles that control the little finger.

4

Plaintiff with hypertension and diabetes with normal foot examination. Id.

Based on the examination, Dr. Bouz concluded that Plaintiff had several physical limitations: she could push, pull, lift and carry 20 pounds occasionally and 10 pounds frequently, and she could use her hands for fine and gross manipulation only frequently. AR 633. Dr. Bouz concluded that Plaintiff had no other physical limitations. See id.

    b.  Medical Consultants

On June 25, 2013, at the SSA's request, Dr. Richard Surrusco reviewed Plaintiff's medical records and opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for 6 hours in an 8-hour day; frequently climb ramps and stairs, balance, stoop, kneel, and crouch; occasionally crawl; and never climb ladders, ropes, or scaffolds. AR 67-68. Dr. Surrusco also opined that Plaintiff's left hand was limited in handling and fingering. AR 68.

On December 5, 2013, Dr. N. J. Rubaum reviewed Plaintiff's medical records on reconsideration and rendered a similar assessment. AR 81-83. Dr. Rubaum agreed with all of Dr. Surrusco's limitations but added that Plaintiff's ability to push and pull with her left hand was limited. AR 81.

    c.  Dr. Xiao-Quan Yuan

On December 27, 2014, Dr. Yuan, a board certified neurologist, performed a neurological evaluation of Plaintiff at the SSA's request. AR 636-44. Plaintiff's chief complaint was bilateral carpal tunnel syndrome. AR 636. Specifically, Plaintiff complained of constant burning in some of the fingers in her left hand and pain in the palm when touching anything. Id. Upon examination of her hands, Dr. Yuan noted "no clubbing, cyanosis or edema." AR 638. Further, he noted "no warmth, erythema or swelling." Id. He also observed that the range of motion in Plaintiff's "upper and lower extremities is grossly within normal limits." Id. Further, motor strength in Plaintiff's wrist

flexion and extension was 4/5. Id. Motor strength was 5/5 otherwise. Id. Based on the above, Dr. Yuan diagnosed Plaintiff with bilateral carpal tunnel syndrome with surgery complications in the left wrist. AR 639. Dr. Yuan opined that Plaintiff could lift and carry 10 pounds occasionally and less than 10 pounds frequently; could stand and walk less than 6 hours in an 8-hour day, but was not limited in her ability to sit; and her use of both hands was severely limited. Id.

On January 3, 2015, Dr. Yuan completed a "Medical Source Statement Of Ability To Do Work-Related Activities (Physical)" form. AR 641-44. Dr. Yuan again opined that Plaintiff could lift and carry 10 pounds occasionally and less than 10 pounds frequently; stand and walk less than 6 hours in an 8-hour day; and sit without limitation. AR 641-42. Further, Dr. Yuan opined Plaintiff was limited in her ability to push and pull with her upper extremities. AR 642. Plaintiff could never balance, kneel, crouch, crawl, stoop, or climb ramps, stairs, ladders, ropes, or scaffolds. Id. Dr. Yuan also opined that Plaintiff should be limited to occasional reaching in all directions, handling, fingering, and feeling. AR 643. Dr. Yuan concluded these limitations were a result of "constant pain, burning sensation on both fingers and hands, and weakness of wrist flexion/extension." AR 642.

          d.      Medical Expert Dr. Arthur Brovender

At the hearing, Dr. Arthur Brovender testified as the ME. He had reviewed Plaintiff's medical record and testified as to Plaintiff's physical limitations. Dr. Brovender explicitly disagreed with Dr. Yuan's conclusion and opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. AR 35, 37. Further, Plaintiff's use of her left upper extremity was limited to rare handling, grasping and fingering, and occasional pushing and pulling. AR 35-36. Plaintiff's use of her right upper extremity was limited to occasional handling, grasping and fingering. Finally, Dr. Brovender opined that Plaintiff was not limited in her ability to reach. AR 35.

e.  The ALJ's findings

In determining Plaintiff's RFC, the ALJ gave great weight to the opinions of Dr. Brovender, Dr. Al Bouz, Dr. Surrusco and Dr. Rubaum. AR 19. The ALJ gave little weight to Dr. Yuan's opinion. Id.

**3.  Discussion**

Plaintiff contends that the ALJ improperly rejected Dr. Yuan's opinion. JS at 3-8. Drs. Bouz, Surrusco, Rubaum, and Brovender's opinions contradict Dr. Yuan's. Compare AR 639 with AR 35-37, 67-68, and 81-83. Dr. Yuan opined that Plaintiff could lift and carry 10 pounds occasionally and less than 10 pounds frequently. AR 639. Drs. Bouz, Surrusco, Rubaum, and Brovender opined that Plaintiff could carry 20 pounds occasionally and 10 pounds frequently. AR 35-37, 67, 81. Because of the contradicting opinions, the ALJ needed to provide "specific and legitimate" reasons for rejecting Dr. Yuan's opinion. See Garrison, 759 F.3d at 1012. The Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for discounting Dr. Yuan's opinion.

First, the ALJ found that Dr. Yuan's opinion was not supported by "the medical record showing that [Plaintiff] did not have any other medical or musculoskeletal issues such that she would be so significantly limited with postural maneuvers or with lifting/carrying." AR 19. Substantial evidence in the record supports the ALJ's determination. Plaintiff was diagnosed with bilateral carpal tunnel syndrome in March 2008. AR 343. In January 2010, Plaintiff underwent carpal tunnel release and partial nerve repair surgery. AR 432-34. Although this surgery did not relieve Plaintiff's symptoms, she received a ganglion block injection in May 2010, which relieved her pain by 80% within one month. AR 401. In October 2010, Plaintiff underwent another ganglion block injection in her left wrist, which was the last treatment she received until she sustained an injury in May 2014. AR 281.

7

Plaintiff argues that Dr. Yuan's opinion was supported by the medical record, citing to her complaints of constant pain and burning, surgeries to her left wrist from which she did not fully recover, and an injury she sustained in May 2014 that exacerbated the pain in her left wrist. JS at 6. Plaintiff's argument is meritless. The ALJ found that the record as a whole did not support Dr. Yuan's extreme limitations, not that Plaintiff had unlimited use of her hands. Dr. Brovender's testimony supports the ALJ's finding: Dr. Brovender specifically noted that the record does not support Dr. Yuan's opinion on Plaintiff's lifting and carrying limitation. AR 36. Also, the ALJ explained that the lack of treatment after October 2010 until Plaintiff's injury in May 2014 suggests that Plaintiff's symptoms "were resolved or her disorder was well managed with medication." AR 17. "A conservative course of treatment can undermine allegations of debilitating pain." Carmickle, 533 F.3d at 1162. Although there might be an alternative explanation for the gap in treatment, the ALJ's conclusion must be upheld when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Last, while Plaintiff fell in May 2014 and injured her left wrist (AR 646), she "last met the insured status requirements of the Social Security Act on March 31, 2014." AR 14. Plaintiff must prove that her disability existed prior to that date, and therefore her later injury does not undermine the ALJ's determination or his weighing of the medical opinions. See Kirkruff v. Berryhill, No. 15-02274, 2017 WL 1173910, at *8 (D. Or. Mar. 28, 2017) (finding no error in ALJ's rejection of Plaintiff's symptom testimony about injury after date last insured); Nobles v. Berryhill, No. 15-2525, 2017 WL 1037613, at *7 (E.D. Cal. Mar. 17, 2017) (rejecting Plaintiff's reliance on MRI where MRI reflected injury after date last insured); Burr v. Colvin, No. 16-05356, 2016 WL 6803419, at *2 (W.D. Wash. Nov. 17, 2016) (disregarding physician opinions on limitations from injury after date last insured).

Second, the ALJ explained that Dr. Yuan's opinion is inconsistent with his own clinical findings. AR 19. During his examination, Dr. Yuan noted that there was "no clubbing, cyanosis or edema." AR 638. Further, he noted "no warmth, erythema or swelling." Id. He also observed that the range of motion in Plaintiff's "upper and lower extremities is grossly within normal limits." Id. Further, motor strength in Plaintiff's both wrist flexion and extension was 4/5. Id. Motor strength was 5/5 otherwise. Id. Despite the unremarkable findings, Dr. Yuan concluded that Plaintiff can lift and carry 10 pounds occasionally and less than 10 pounds frequently. AR 639. An ALJ may discount a doctor's opinion if it is contradicted by his own findings. See Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995).

Third, the ALJ explained that Dr. Yuan's opinion was inconsistent with the other doctors' opinions. AR 19. As discussed above, the state agency consultants, the other consultative examiner, and the ME all opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, contradicting Dr. Yuan's opinion. Compare AR 639 with AR 35-37, 67-68, and 81-83. Further, the ME explicitly opined that Dr. Yuan's opinion is not supported by the record.

Plaintiff argues that Dr. Yuan's opinion should control, because he was an examining physician. JS at 6. She also argues that Dr. Yuan's opinion should outweigh Dr. Bouz's opinion, because it is more recent. Id. at 7.

Opinions of non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. Thomas, 278 F.3d at 957. Here, the non-examining doctors reviewed Plaintiff's medical records and reached the same conclusions regarding her physical limitations. As such, their opinions constitute substantial evidence. Also, Dr. Yuan's examination may be more recent, but it occurred after Plaintiff's date last insured. Thus, unlike Dr. Yuan, Dr. Bouz examined

9

Plaintiff during the relevant time period. Accordingly, the ALJ's citation to four other doctors' opinions that conflicted with Dr. Yuan's was a specific and legitimate reason for rejecting it.

**B.     The ALJ's Step-Five Assessment**

Plaintiff contends that the ALJ improperly determined that she could perform alternative work through the date last insured, because the VE did not explain the conflict between his testimony and the Dictionary of Occupational Titles ("DOT") occupational requirements. See JS at 16-19.

**1.     Applicable Law**

At step five of the sequential evaluation process, the Commissioner must demonstrate that the claimant can perform work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's RFC, age, education, and work experience. Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999); 20 C.F.R. § 404.1560(c). In making a disability determination, the Dictionary of Occupational Titles ("DOT") is the primary source for "information about the requirements of work in the national economy." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). The ALJ may also use VE testimony to obtain occupational evidence. Id.

When a VE's testimony presents an "apparent or obvious" conflict with a DOT occupation, the ALJ "must elicit a reasonable explanation for the conflict before relying on the [expert's] evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 WL 1898704, at *2; Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016). Failure to perform this step is procedural error. Massachi, 486 F.3d at 1153-54 & n.19.

**2.     Relevant Facts**

At the hearing, the VE identified Plaintiff's past relevant work as a marker, department manager, and stock clerk. AR 54. The ALJ presented the

following hypothetical to the VE:

> an individual the same age and education as [Plaintiff] with past relevant work experience in the positions listed . . . limited to light work activities; frequent overhead reaching on the non-dominant left side; occasional pushing or pulling on the non-dominant left side; less than occasional manipulation [handling and fingering] on the non-dominant left side; occasional manipulation [handling and fingering] on the dominant right side; no ladders, ropes or scaffolds; no unprotected heights.

AR 55.

The VE opined that the hypothetical individual could not perform Plaintiff's past relevant work. AR 56. The VE further opined that "with occasional fine fingering for the right [hand] and reaching," there would be other work in significant numbers in the national economy as a furniture rental consultant (DOT 295.357-018) and counter clerk (DOT 249.366-010). Id. The ALJ specifically asked the VE about conflicts with the DOT. AR 57. The VE stated that there were no conflicts. Id. Plaintiff's counsel did not ask the VE any questions. Id.

In his written decision, the ALJ determined, under SSR 00-4P, that the VE's testimony was "consistent with the information contained in the [DOT]." AR 21. Based on the VE's testimony, the ALJ found that, before the date last insured, Plaintiff had been able to perform work that existed in significant numbers in the national economy—i.e., as a furniture rental consultant or counter clerk. AR 20-21.

**3. Analysis**

Plaintiff contends that the ALJ erred in determining that she could have worked as a furniture rental consultant and counter clerk. See JS at 16-19. Plaintiff argues that the DOT descriptions of those jobs require occasionally

11

bilateral reaching, fingering, and handling. Id. at 17. Plaintiff points to her left hand restrictions and argues that the VE should have explained the conflict between her RFC and the DOT descriptions. See id. at 16-19.

"[N]ot all potential conflicts between a [VE's] job suitability recommendation" and the DOT's job description "will be apparent or obvious," and the ALJ "need only follow up on those that are." Gutierrez, 844 F.3d at 807-08. Accordingly, "[f]or a difference between an expert's testimony and the [DOT] to be fairly characterized as a conflict, it must be obvious and apparent." Id. at 808. "This means that the testimony must be at odds with the [DOT's description] of job requirements that are essential, integral, or expected." Id. "[T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." Id.

Accordingly, the ALJ "must ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary to the [DOT], but the obligation doesn't extend to unlikely situations or circumstances." Id. Thus, "where the frequency or necessity of a [job's] task is unlikely and unforeseeable . . . there's no [such] obligation." Id. Courts may use their "common experience" in this analysis. Lamear v. Berryhill, 865 F.3d 1201, 1205 (9th Cir. 2017).

Here, the DOT describes the jobs identified by the VE as follows:

> Furniture Rental Consultant: Rents furniture and accessories to customers: Talks to customer to determine furniture preferences and requirements. Guides or accompanies customer through showroom, answers questions, and advises customer on compatibility of various styles and colors of furniture items. Compiles list of customer-selected items. Computes rental fee, explains rental terms, and presents list to customer for approval. Prepares order form and lease agreement, explains terms of lease to

12

customer, and obtains customer signature. Obtains credit information from customer. Forwards forms to credit office for verification of customer credit status and approval of order. Collects initial payment from customer. Contacts customers to encourage followup transactions. May visit commercial customer site to solicit rental contracts, or review floor plans of new construction and suggest suitable furnishings. May sell furniture or accessories.

DOT 295.357-018, 1991 WL 672589.

> Counter Clerk: Receives film for processing, loads film into equipment that automatically processes film for subsequent photo printing, and collects payment from customers of photofinishing establishment: Answers customer's questions regarding prices and services. Receives film to be processed from customer and enters identification data and printing instructions on service log and customer order envelope. Loads film into equipment that automatically processes film, and routes processed film for subsequent photo printing. Files processed film and photographic prints according to customer's name. Locates processed film and prints for customer. Totals charges, using cash register, collects payment, and returns prints and processed film to customer. Sells photo supplies, such as film, batteries, and flashcubes.

DOT 249.366-010, 1991 WL 672323. Both occupations require "occasional" reaching, handling, and fingering. Id.; DOT 295.357-018, 1991 WL 672589.

Plaintiff's RFC limited her to frequent overhead reaching with her left upper extremity and "less than occasional or rare" manipulation with her left upper extremity. There is no conflict between the DOT descriptions and Plaintiff's "frequent" ability to reach on her left side. The question, therefore, is whether a conflict exists between the occupations' requirement of "occasional"

13

handling and fingering, and Plaintiff's limitation to "rare" manipulation with her left side.[4] The SSA has defined "handling" as "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands." SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985) (emphasis added). "Fingering involves picking, pinching, or otherwise working primarily with the fingers." Id.

Given these ambiguous definitions and the DOT's descriptions, the Court concludes that while an obvious conflict may exist between the RFC and the counter clerk requirements, any error is harmless because no apparent conflict exists with the furniture rental consultant requirements. Fingering and handling film with both hands would likely be an integral part of a counter clerk's job; it would be hard to load film into equipment, for example, with one hand. It is far from obvious, however, that an essential part of being a furniture rental consultant would involve bilateral fingering or handling. The VE testified that there are 22,000 furniture rental consultant positions nationally, and Plaintiff does not contest the sufficiency of this number. See Gutierrez v. Comm'r of Soc. Sec. Admin., 740 F.3d 519, 527-29 (9th Cir. 2014) ("A finding of 25,000 jobs likely does not fall into the category of 'isolated jobs' existing in 'very limited numbers.'"). Thus, any error in failing to ask the VE to resolve the counter clerk error was harmless. See Buckins v. Berryhill, 706 F. App'x 380, 381 (9th Cir. 2017) (finding ALJ erred in failing to asking VE to resolve conflicts between opinion and DOT, but error was harmless because there was no conflict as to other occupations identified by VE that existed in significant numbers in national economy).

///
///

---

[4] The ALJ told the VE that by "manipulation," he meant "handling or fingering." See AR 55-56.

14

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: February 23, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge